<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

AFOLUSO ADESANYA,

                      Plaintiff,

v.

NOVARTIS PHARMACEUTICALS
CORPORATION,

                      Defendant.

Case No. 2:13-cv-05564(SDW)(SCM)

**OPINION**

August  15, 2016

**WIGENTON**, District Judge.

      Before this Court is Defendant Novartis Pharmaceuticals Corporation's ("Novartis" or "Defendant") Global Motion which seeks: (1) sanctions against *pro se* Plaintiff Afoluso Adesanya ("Plaintiff"), including dismissal of Plaintiff's claims, or, in the alternative, summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on all of Plaintiff's claims; (2) summary judgment pursuant to Rule 56 on all of Defendant's counterclaims; (3) sanctions against Plaintiff's former counsel, Ari R. Karpf, Esq. ("Karpf"); (4) sanctions against Plaintiff's husband, Adenekan Hezekiah Adesanya ("Mr. Adesanya"); and (5) sanctions against Mr. Adesanya's former counsel, Jerald G. Abrams, Esq. ("Abrams").  Also before this Court is Plaintiff's Cross-Motion for Summary Judgment on Defendant's Counterclaims.[1]  This Court has jurisdiction over

---

[1] Plaintiff asks this Court to "dismiss with prejudice defendant [sic] counterclaims, dismiss with prejudice defendant [sic] motion for sanctions and to grant plaintiff [sic] claim in this matter," and "grant her motion for summary

this action pursuant to 28 U.S.C § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391. This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons discussed below, this Court **GRANTS** Defendant's Motion for Sanctions against Plaintiff and **DISMISSES** Plaintiff's claims; **DISMISSES AS MOOT** Defendant's Motion for Summary Judgment on all of Plaintiff's claims; **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment on Counts One, Three, Four, Five and Eight of Defendant's counterclaims; **GRANTS** Plaintiff's Cross-Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment as to Count Seven of Defendant's counterclaims only; **DISMISSES AS MOOT** Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment as to Counts Two and Six of Defendant's Counterclaims; **GRANTS** Defendant's motion for sanctions against Mr. Adesanya; and **DENIES** Defendant's motions for sanctions against Karpf and Abrams.[2]

I.   **BACKGROUND AND PROCEDURAL HISTORY**

In March, 2010, Novartis hired Plaintiff as a Brand Safety Leader in its Oncology Business Unit. (Dkt. No. 209-4 ¶¶ 1, 18.)[3]  At that time, Defendant was unaware that Plaintiff misrepresented her employment history during the application process.  (*Id.* ¶¶ 8-14.)  Plaintiff inflated prior salaries, created phony supervisors, and concealed that she had been involuntarily terminated from a prior position.  (*Id.* ¶ 14.)  Novartis relied upon those representations in offering Plaintiff a job and in calculating her compensation package.  (*Id.*  ¶¶ 15-16.)

---

judgement."  (Pl.'s Opp'n Br. at 8.)  This Court treats Plaintiff's request as a Cross-Motion for Summary Judgment on Defendant's Counterclaims.

[2] Plaintiff also requests permission "to further amend her claims to include harassment and retaliation (Title VII violations)."  (Pl.'s Opp'n. Br. at 7, 36.)  As there is no formal motion before this Court to amend, and the time for amendment has long passed, this Court will not grant Plaintiff's request.

[3] Citations to "Dkt. No. 209-4" refer to Defendant's Statement of Undisputed Material Facts and the exhibits cited therein.

Both Defendant's Employee Agreement ("Employee Agreement") and its Conflict of Interest Policy ("Conflicts Policy") precluded Plaintiff from holding outside employment during her tenure with Novartis that would interfere with her obligations to the company.  (*Id.* at ¶¶ 2, 3.) Pursuant to the Employment Agreement, Plaintiff agreed to "devote [her] best efforts and full business loyalty to [her] employment with Novartis" and not to hold "other employment or engage in any other business which may adversely affect [her] ability to perform [her] job responsibilities at Novartis."  (*Id.* ¶ 2.)  The Conflicts Policy prohibits employees from: 1) holding a "second job with or provid[ing] any services to a competitor of" Novartis; 2) owning directly or indirectly "any interest in any Company which competes, or does business, with" Novartis; and 3) "engag[ing] in any outside employment or other activity which encroaches on the time or attention that should be devoted to [Novartis's] affairs, otherwise detracts from your ability to perform your responsibilities" or deprives Novartis of "your full loyalty."  (*Id.* ¶ 3.)  Bonuses were available to Plaintiff pursuant to Defendant's Annual Incentive Plan ("AIP") subject to Plaintiff's "adherence to and compliance with" Novartis's rules and policies.  (*Id.* ¶ 6-7.)

Plaintiff was in violation of these policies from the very start of her employment.  Plaintiff did not disclose to Novartis that, at the time of her hire and continuing through her tenure with Novartis, she and her husband jointly owned Global Drug Safety & Surveillance, Inc. a/k/a LaRon Pharma, Inc. ("LaRon"), a sub-S corporation that collaborates with "other pharmaceutical companies to develop and market their products."[4]  (*Id.* ¶ 10, 13.)  Plaintiff owned 50% of LaRon, a "specialty pharmaceutical company" engaged in licensing, developing and marketing prescription drugs for four therapeutic groups, including oncology.  (*Id.*)

---

[4] Defendant contends that Plaintiff also has an ownership interest in DanSetH Realty LLC a/k/a Ron Nuga LLC ("Ron Nuga LLC").  (Dkt. No. 209-4 ¶ 10.)  Plaintiff denies having any involvement that company.  (*Id.* ¶ 53.)

Once employed by Novartis, Plaintiff also sought and entered into at least two outside consulting positions in the pharmaceutical industry.  In August 2011, Plaintiff accepted a position as a drug safety consultant with Biomedical Consulting International, Inc. ("Biomedical") to provide "scientific research & development services."  (*Id.* ¶¶ 61, 55-58.)  Through Biomedical, Plaintiff also provided drug safety services to Auxilium Pharmaceuticals ("Auxilium") and through Auxilium, to direct competitors of Novartis.  (*Id.* ¶¶ 62-68, 70-71.)  Auxilium required an average weekly commitment of ten hours from Plaintiff, although at times, Plaintiff billed over 100 hours a month to that company.  (*Id.* ¶¶ 62, 71.)  Between 2011 and 2012, Plaintiff received $59,189.00 from Biomedical/Auxilium.  (*Id.* ¶ 77.)  From January 2012 through February 2013, using the alias "Ron Nuga, MD," Plaintiff also provided drug safety services to Astellas Pharma Global Development, Inc. ("Astellas").  (*Id.* ¶¶ 83-87.)  Plaintiff worked approximately 40 hours a week for Astellas, traveled to its Illinois headquarters on at least five occasions, and earned approximately $500,000.00 for her services.[5]  (*Id.* ¶¶ 84-87.)  Plaintiff did not disclose her outside activities or income to Novartis.  (*Id.* ¶ 62.)

Plaintiff's employment was also predicated on her relocation from her home in Pennsylvania to a location closer to the Novartis offices in Florham Park, New Jersey.  (*Id.* ¶ 18.)  Despite receiving over $26,000 in relocation funds, Plaintiff remained in, and worked almost exclusively from, her home in Pennsylvania, in contravention of Defendant's flex-time policy which allowed employees in her department to work from home one to two days a week.  (*Id.* ¶¶ 19, 21, 34.)[6]  Plaintiff's performance evaluations noted that her limited time in the office was negatively affecting her team.  (*Id.* ¶¶ 22-23, 40, 43.)

---

[5] Astellas made its payments to Ron Nuga LLC.  (Dkt. No. 209-4 ¶¶ 81-82.)
[6] The policy changed during the course of Plaintiff's employment from one day a week to two days a week in June 2013.  (*Id.* ¶ 34.)

On April 10, 2012, Plaintiff's Human Resources Business Partner, Megan Burley ("Burley"), instructed Plaintiff that she would be required to come into the office more frequently, and provided Plaintiff with a plan to increase the number of days she worked in the office, so that by December 2012, she would work from home only one day a week.  (*Id.* ¶ 26.)  At that time, despite certifying that she was not disabled when she was hired, Plaintiff told Burley she had medical problems that prevented her from driving to New Jersey.  (*Id.* ¶ 25-26.)  On May 1, 2012, Plaintiff submitted a Request for Accommodation to work from home four days per week due to conditions including: "(a) low back pain, (b) neck pain, (c) severe dry eyes, and (d) left hand pain post-surgery."  (*Id.* ¶ 27.)  At this same time, Plaintiff was billing hundreds of hours to her other consulting jobs.  (*Id.* ¶¶ 32.)  Unaware of her external employment, Burley and Plaintiff's Manager, Annick Krebs ("Krebs") reviewed Plaintiff's Request for Accommodation and on September 5, 2012, agreed to allow Plaintiff to work from home two days per week, and offered to provide Plaintiff with additional relocation assistance in order to reduce her commute.  (*Id.* ¶¶ 33-34, 36.)  Although Plaintiff agreed to these terms, she continued to work from home[7] and Plaintiff was warned that her absences were unacceptable on March 13, 2013.  (*Id.* ¶¶ 33-34, 36, 41.)  Plaintiff was subsequently terminated effective September 2013.[8]  (*Id*. ¶ 36, 43.)  The reason given for her termination was "performance based, predominately driven about not coming into the office three days a week, which impacted her interactions and collaboration with her close functional team members."  (*Id*. ¶ 44.)  During her employment with Novartis, Plaintiff earned $1,205,720 in cash

---

[7] On October 15, 2012, Plaintiff's chiropractor, Dr. Vito Bianco, provided Defendant with a letter indicating that Plaintiff was undergoing Spinal Decompression Therapy to treat "chronic neck and low back pain."  (Dkt. No. 209-4 Ex. 45.)  Dr. Bianco recommended that Plaintiff not drive long distances for a month while undergoing treatment. (*Id.*)  Dr. Bianco did not indicate Plaintiff was unable to work and Plaintiff did not comply with his proposed treatment plan.  (*Id.* ¶¶ 37-38.)
[8] Upon terminating Plaintiff, Novartis offered her severance pay if she agreed to waive her legal claims against the company for discrimination and retaliation.  (Dkt. No. 1 ¶ 57.)

compensation (including $210,403 in bonuses under the AIP) and $530,147 in non-monetary compensation, including insurance and retirement benefits.  (*Id.* ¶ 45.)

On September 19, 2013, Plaintiff filed a Complaint in this Court asserting state and federal discrimination and retaliation claims.[9]  (Dkt. No. 1.)  On December 6, 2013, Defendant filed its Answer and Counterclaims, alleging a variety of fraud and breach of contract claims.  (Dkt. No. 7.)[10]  On July 3, 2014, Plaintiff filed her Answer to Defendant's Counterclaims.  (Dkt. No. 20.)  On May 7, 2015, Plaintiff was granted permission to amend her Complaint.  (Dkt. Nos. 47, 55.)  Plaintiff's Amended Complaint asserts discrimination and failure to accommodate (Count I) and retaliation (Count II) in violation of the New Jersey Law Against Discrimination ("NJLAD"), interference and retaliation in violation of the Family and Medical Leave Act ("FMLA") (Count III), discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act ("ADA") (Count IV).  (Dkt. No. 57.)

On May 27, 2015, Defendant filed an Answer and Counterclaims to Plaintiff's Amended Complaint, alleging fraud on Plaintiff's application and résumé (Count I), fraud with regard to the Relocation Agreement (Count II), breach of the Relocation Agreement (Count III), breach of the AIP (Count IV), breach of the duty of good faith and fair dealing (Count V), unjust enrichment (Count VI), misappropriation of confidential and proprietary information (Count VII), and breach of the duty of loyalty and the Conflicts Policy (Count VIII).  (Dkt. No. 60.).

Discovery, which was at all times contentious and marked by delay, began in September 2014.  During discovery, and while represented by Karpf, Plaintiff provided false and misleading written responses to discovery requests and deposition testimony, such as: 1) claiming that her

---

[9] Prior to filing her Complaint, Plaintiff expressed concerns about disability discrimination to local management and to Novartis's Global Head of Development for Defendant.  (Dkt. No. 1 ¶ 28.)
[10] On December 23, 2013, Plaintiff moved to dismiss one of Defendant's counterclaims and to strike several of Defendant's affirmative defenses.  (Dkt. No. 9.)  This Court denied the motion on June 4, 2014.  (Dkt. No. 17.)

"sole compensation and income during her employment with Defendant came from Defendant," (Dkt. No. 209-4 ¶ 53); 2) denying that she worked for other entities while working for Novartis. (*Id.* ¶ 54); and 3) claiming that her interest in LaRon ended in 2009. (*Id.* Ex. 61 No. 7.)

For nearly two years, Karpf advocated aggressively for his client, denying that Plaintiff held an ownership interest in LaRon or that she worked for competing pharmaceutical companies during her tenure with Novartis. (Dkt. No. 209-4 ¶¶ 126-129, 131.)  Further, Karpf referred to Novartis's counterclaims as "frivolous" and threatened to move for Rule 11 and Section 1927 sanctions against defense counsel for pursuing those claims.  (*Id.* ¶¶ 137-40.)  Karpf also challenged Defendant's requests to issue third-party subpoenas as an improper "fishing expedition."  (*Id.* ¶ 134.)  However, on July 20, 2015, citing "ethical concerns," Karpf moved to withdraw as Plaintiff's counsel.  (*Id.* ¶ 145, Dkt. Nos. 74, 80.)  Since August 28, 2015, Plaintiff has proceeded *pro se*.  (Dkt. Nos. 74, 87, 92.)

During discovery, Defendant subpoenaed several third-parties, including Mr. Adesanya. (Dkt. No. 209-4 ¶ 111.)  Mr. Adesanya refused to provide documents demanded by the subpoena, forcing Defendant to file a motion to compel.  (Dkt. No. 58.)  On October 6, 2015, this Court ordered Mr. Adesanya to produce the subpoenaed documents by October 21, 2015.  (Dkt. No. 109.)  He did not.  On October 30, 2015, Mr. Adesanya was again instructed to comply, and this Court granted Defendant leave to file for sanctions for fees if Mr. Adesanya did not do so.  (Dkt. No. 132.)  Mr. Adesanya has still not complied with Defendant's document demands.  (*Id.* at ¶¶ 112-13.) [11]

---

[11] When asked for relevant documents regarding LaRon or Ron Nuga LLC, Mr. Adesanya certified that he and his wife did not possess any, even though there were thousands located in their home.  (Dkt. No. 209-4 ¶¶ 109, 112, 132-133.)

Mr. Adesanya did, however, appear for a deposition on April 12, 2015.  (Dkt. No. 209-4 ¶ 112.)  Despite tax returns identifying Plaintiff as a half-owner of LaRon, Mr. Adesanya testified that Plaintiff "had no affiliation with any efforts of LaRon while she worked for Novartis."  (*Id.* ¶¶ 13, 102.)  Furthermore, Mr. Adesanya testified that Astellas hired him and not Plaintiff and that he had a "legal right" to sign the Astellas contract using the name Ron Nuga, even though that name is a fictitious name used by Plaintiff.  (*Id.* ¶ 89-90.)

During discovery, Mr. Adesanya's former counsel, Abrams, also attempted to block Defendant's discovery requests to Mr. Ronald Kamens ("Kamens"), Plaintiff's tax preparer, ARM-Multi Insurance Services ("ARM"), Ron Nuga LLC's insurance broker, and Suburban Development Council ("SDC"), the lender of a small business loan to LaRon.  (Dkt. No. 209-4 ¶¶ 118-19.)  Specifically, on April 16, 2015, Defendant issued a subpoena to Kamens demanding that he produce documents related to Plaintiff's tax returns by April 24 and appear for a deposition on April 27.  (*Id.* Ex. 111.)  Kamens did not comply.[12]  On April 23, 2015, Defendant also issued subpoenas to ARM and to SDC demanding documents concerning Plaintiff's and Mr. Adesanya's business interests and loans.  (*Id.*)  On April 28, 2015, Abrams wrote to each of the subpoena recipients stating that Defendant had "failed to establish that any of the requested information is relevant" to the instant case, and further advising the recipients that "As my clients have objected to the production of said documents and testimony regarding such matters, you should wait until the matter has been resolved or the Court makes a ruling regarding said subpoena."  (*Id.* Ex. 112.)  In a follow-up letter to Kamens, dated May 7, 2015, Abrams repeated his position.  (*Id.* Ex. 114.)  On September 29, 2015, Abrams withdrew as counsel for Mr. Adesanya.  (Dkt. No. 103.)

---

[12] Defense counsel called Kamens on April 24, 2015 "to coordinate his compliance with the Subpoena," but it appears Kamens did not return the call.  (Dkt. No. 90-1 ¶ 10.)

On January 15, 2016, this Court granted Defendant's request to submit an omnibus motion for sanctions and summary judgment.  (Dkt. Nos. 202, 203.) On February 12, 2016, Defendant filed the instant motion.  (Dkt. No. 209.)  Adams and Karpf filed individual responses on March 21, 2016.  (Dkt. Nos. 231, 232.)  Plaintiff filed her opposition on March 22, 2016, which contained a four-page opposition brief from Mr. Adesanya.  (Dkt. No. 234 and Part V at 80-85.)  On April 4, 2016, Novartis filed individual reply briefs for Plaintiff, Mr. Adesanya, Karpf, and Adams. (Dkt. Nos. 235, 238-240.)  Karpf filed a sur-reply on April 8, 2016.  (Dkt. No. 241.)

## II.      LEGAL STANDARD

### A.  Sanctions

#### 1.  *Parties*

Courts possess the inherent power to sanction those who come before them. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *U.S. v. Hudson*, 11 U.S. 32 (7 Cranch), 43 (1812).  This authority arises not from "rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962).  This power "extends to a full range of litigation abuses" and exists to "fill in the interstices" where rules and statutes fail to address actionable conduct.  *Chambers*, 501 U.S. at 46.

A court may sanction a responsible party when it finds that "fraud has been practiced upon it . . . ."  *Id*.  "Fraud on the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme" that interferes with the court's ability "impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."  *Perna v. Elec. Data Sys., Corp.*, 916 F. Supp. 388, 397 (D.N.J. 1995) (internal citation omitted).  In order to prevent the

perpetration of fraud, a court may use its power, *inter alia*, to dismiss a case.  *Id.* at 397.  Before

doing so, a court must consider the following six factors to determine if dismissal is proper:

> (1) the existence of certain extraordinary circumstances, (2) the presence of
> willfulness, bad faith, or fault by the offending party, (3) the consideration of
> lesser sanctions to rectify the wrong and to deter similar conduct in the future,
> (4) the relationship or nexus between the misconduct drawing the dismissal
> sanction and the matters in controversy in the case, (5) prejudice and the public
> interest, and (6) the degree of the wrongdoer's culpability.

*Id.* at 398.

A court may also sanction a party for violations of discovery orders under Federal Rules

of Civil Procedure 37 and/or 41.  *See* FED. R. CIV. P. 37, 41 (identifying potential sanctions

including payment of fees and costs, striking pleadings, entering default judgment and/or

dismissing claims).  Before dismissing a complaint for failure to cooperate in discovery or for

failure to comply with a court's discovery order, a court must balance the following factors:

> (1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the
> adversary caused by the failure to meet scheduling orders and respond to
> discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or
> the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other
> than dismissal, which entails an analysis of *alternative sanctions*; and (6) the
> *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis in original).

"No single factor is determinative and not all must be satisfied to justify dismissal."  *Stezzi v.

Citizens Bank of Pa.*, 542 F. Appx. 124, 126 (3d Cir. 2013).

### 2. *Non-Parties*

This Court also possesses the inherent power to sanction non-parties.  *Bartos v. Pa.*, No.

1:08-cv-0366, 2010 WL 1816674, at *4 (M.D. Pa May 5, 2010) (noting that "[t]he power of this

Court to sanction misconduct by witnesses and non-party deponents in civil cases is beyond any

serious dispute").  "[T]o be subject to the Court's inherent power to sanction, a non-party not

subject to court order must (1) have a substantial interest in the outcome of the litigation; and (2) substantially participate in the proceedings in which he interfered." *Id.* at *7 (internal citations omitted).   Sanctionable misconduct by a non-party witness can include "failure to appear, destruction of evidence, or giving false, misleading and materially incomplete testimony." *Id.* at *14 (internal citations omitted).  Sanctions should be "narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court."    *Id.* at *6; *see also Klein v. Stahl, GMBH & Co., Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999).

### 3.  Attorneys

Congress has provided for the imposition of monetary sanctions under 28 U.S.C. §1927 on attorneys who multiply "the proceedings of any case unreasonably and vexatiously."  28 U.S.C. § 1927; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).   Before imposing such sanctions, which can include costs, expenses, and reasonable attorneys' fees, a court must find that an attorney has: "(1) has multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."  *In re Prudential Ins.*, 278 F.3d at 188; *see also Alphonso v. Pitney Bowes*, 356 F. Supp. 2d 442, 452 (D.N.J. 2005).  Bad faith must be demonstrated by "findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Prudential Ins.*, 278 F.3d at 188 (internal citation omitted); *see also Zuk v. E. Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996).

### B.  Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d

584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party

is required to "point to concrete evidence in the record which supports each essential element of

its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If

the nonmoving party "fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party

is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.  Furthermore, in

deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate

the evidence and decide the truth of the matter, but to determine whether there is a genuine issue

for trial.  *Anderson*, 477 U.S. at 249.  The nonmoving party cannot defeat summary judgment

simply by asserting that certain evidence submitted by the moving party is not credible.  *S.E.C. v.*

*Antar*, 44 Fed. Appx. 548, 554 (3d Cir. 2002).

## III.   DISCUSSION

### A.   <u>Sanctions</u>

#### 1.   *Sanctions Against Plaintiff*

Defendant urges this Court to dismiss Plaintiff's claims as a sanction for her "deceit,"

pursuit of "baseless claims," "fraud," and "obstruction of discovery."   (Def.'s Mot. 1-2.)

Reviewing Plaintiff's conduct in light of the *Pena* factors, this Court holds that dismissal of her

claims is an appropriate sanction.

Plaintiff's suit is extraordinary in that it is predicated on a willful, determined effort by

Plaintiff to deceive Defendant and this Court.  Plaintiff misstated her employment history, outside

consulting, sources of income, business interests and even her name when it suited her purpose.

This Court also finds that Plaintiff's conduct was willful and in bad faith.  Her deposition testimony

and written responses to discovery requests were false and contradict the information uncovered

by defense counsel.   This is not a case of forgetfulness or confusion.  This is perjury.  There is a clear connection between Plaintiff's obfuscation and the matters in controversy in this case – namely Plaintiff's contractual obligations to Defendant and the basis for her termination.  Further, Defendant has been prejudiced by Plaintiff's interference in the discovery process.  By giving false answers and refusing to turn over documents, Plaintiff forced Defendants to issue and defend third-party subpoenas and incur additional effort and expense to obtain information that Plaintiff possessed and should have provided.  *See, e.g.*, *Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.*, Civ. No. 10-1453(MAS)(TJB), 2014 WL 1340049, at *6 (D.N.J. Apr. 3, 2014) (finding prejudice "when a party is deprived of discovery and is required to repeatedly ask its adversary to comply with discovery obligations and to request relief from the Court again and again"); *Hayes v. Nestor*, Civ. No. 09-6092(NLH)(AMD), 2013 WL 5176703, at *4 (D.N.J. Sept. 12, 2013) (defining prejudice to "include[] deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery"); *Adams v. Trustees of N.J. Brewery Emp.'s Pension Tr. Fund,* 29 F.3d 863, 874 (3d Cir. 1994).   Plaintiff is entirely culpable in this matter.  She had every opportunity to tell the truth and cooperate in discovery and chose not to.

Given the brazen manner in which Plaintiff attempted to mislead defense counsel and manipulate the judicial process, this Court does not believe that a lesser sanction will deter Plaintiff from future improper conduct.   Dismissal is the only sanction that will protect both judicial resources and the public interest in maintaining the integrity of the courts -- preventing Plaintiff from continuing to litigate frivolous claims and providing an object lesson to future litigants who

may desire to follow the same path.  Therefore, this Court will grant Defendant's Motion for Sanctions and will dismiss Plaintiff's Amended Complaint.[13]

### 2.   *Sanctions Against Mr. Adesanya*

Defendant also seeks sanctions against Mr. Adesanya for failure to comply with court orders and the subpoena *ad testificandum* and *duces tecum* served on him on October 1, 2014.[14] (Def.'s Mot. 35-39, Dkt Nos. 109, 132.)  Mr. Adesanya has refused both defense requests and three

---

[13] As a result, this Court must dismiss Defendant's alternative motion for summary judgment on Plaintiff's claims as moot, noting, however, that because there are no genuine issues of material fact as to Plaintiff's claims, summary judgment would be appropriate.

To state a claim for discrimination under the ADA or NJLAD, Plaintiff must first show: 1) she was disabled or perceived to be disabled; 2) that she was qualified to do the job; 3) that she was terminated; and 4) that Defendant tried to or did replace her with a similarly non-disabled person.  *See, e.g.*, *Joseph v. N.J. Transit Rail Operations, Inc.*, 586 Fed. Appx. 890, 892 (3d Cir. 2014); *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 834 (N.J. 2002).  Disability under the ADA is a "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1).  Under the NJLAD, a handicap is a "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect or illness . . . ."  *Viscik*, 800 A.2d at 834.  "Where the existence of a handicap is not readily apparent, expert medical evidence is required."  *Id.* at 835.

Plaintiff has presented no evidence of an actual disability sufficient to satisfy the first element of her claims.  As noted above, Dr. Bianco's letter does not indicate that Plaintiff is disabled. The Progress Note from Jonas J. Gopez, M.D. submitted by Plaintiff indicates only that Plaintiff complains of lower back and minor intermittent thigh pain which is exacerbated by prolonged sitting or driving.  (Dkt. No. 234 Ex. 15.)  Dr. Gopez's notes state that Plaintiff exhibits no "significant pathology," does not need surgery, and had not been "fully compliant" with her chiropractic treatment regimen.  *Id.*  Dr. Gopez does not describe Plaintiff as disabled.  Indeed, Plaintiff has never claimed that she cannot work or perform the functions of her job; she argues only that she cannot commute to Defendant's offices in New Jersey.  An inability or unwillingness to commute, however, is not a disability.  *See, e.g.*, *Lloyd v. Washington & Jefferson Coll.*, Civ. No. 05-802, 2007 WL 1575448, at *10 (W.D. Pa. May 30, 2007), *aff'd*, 288 F. Appx. 786 (3d Cir. 2008); *Dicino v. Aetna U.S. Healthcare*, Civ. No. 01-3250(JBS), 2003 WL 21501818, at *15 (D.N.J. June 23, 2003).  Because Plaintiff is not disabled under the ADA or the NJLAD, her discrimination claims fail.

To state a claim for retaliation under the ADA or NJLAD, Plaintiff must first show 1) that she requested a reasonable accommodation, 2) that she suffered an adverse employment action, and 3) a causal connection between the two events.  *See, e.g.*, *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004).  As Plaintiff cannot show she is disabled, her request for accommodation is unreasonable and her retaliation claims fail.

To state a claim for interference and retaliation under the FMLA, Plaintiff must first show she gave Defendant notice that she intended to take FMLA leave.  29 U.S.C. § 2615(a)(1); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). The record however, indicates only that Plaintiff sought a telecommuting arrangement, not that she ever requested FMLA leave.

Defendant also moves in the alternative to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 37 and 41(b) for Plaintiff's failure to comply with the discovery process.  Because this Court grants Defendant's Motion for Sanctions pursuant to its inherent powers to prevent fraud on the court, it need not reach Defendant's alternative ground for dismissal.  This Court notes, however, that the analysis under *Poulis* for dismissal under Rules 37 and 41 addresses factors similar to those articulated in *Pena* and would also warrant dismissal.

[14] Defendant first moved for sanctions against Mr. Adesanya on November 5, 2015.  (Dkt. No. 133.)  That motion was withdrawn without prejudice on February 4, 2016.  (Dkt. No. 206.)

15

separate court orders to turn over documents relevant to the issues in this case.  (Def.'s Mot. at 15-16; Dkt. Nos. 58, 109, 132, 179, 209-4 ¶¶ 111, 117.)  Mr. Adesanya did appear for a deposition, at which he gave false testimony, claiming that he, not Plaintiff, worked for Astellas, despite proof from Astellas that it had hired Plaintiff and paid her nearly $500,000 in compensation.  (Dkt. No. 209-4 ¶¶ 85-90.)  Because this Court finds that Mr. Adesanya, as Plaintiff's spouse and business partner, has a substantial interest in the outcome of this case and has participated in proceedings, often sitting at counsel table with his wife and conferring with her, appearing for a deposition at which he gave false testimony, and submitting two false certifications, (*see* Dkt. No. 209-4 ¶¶ 13, 102, 109, 112, 132-33), sanctions are both permissible and appropriate.  *See, e.g.*, *Bartos*, 2010 WL 1816674, at *4.  Non-parties may not refuse to comply with discovery orders or give misleading testimony with impunity.  This Court will grant Defendant's Motion for Sanctions against Mr. Adesanya, but reserves decision on what penalty to impose pending Defendant's submission of a certification identifying and providing support for the exact sanctions it seeks.

### 3.  *Sanctions Against Counsel*

#### 1.  Karpf

Defendant argues that sanctions against Karpf are warranted because Karpf "had to know about Plaintiff's fraud" "very early on in this case" and "chose to help further her scam."  (Def.'s Mot. at 2, 41.)  Defendant appears to argue that by redacting Plaintiff's tax returns and filing Plaintiff's false discovery responses, Karpf not only unreasonably multiplied the instant proceedings, but also violated his affirmative duty under Federal Rule of Civil Procedure 11 ("Rule 11") "to conduct a reasonable inquiry into the facts and the law before filing" papers with this Court.  *Bus. Guides, Inc. v. Chromatic Commc'ns Enter., Inc.*, 498 U.S. 533, 551 (1991); *see also Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (defining

16

reasonableness "as an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact"). Defendant also takes exception to Karpf's threat to file a Rule 11 motion against defense counsel for making allegedly frivolous discovery requests, and his discussion of amending Plaintiff's complaint to include counts against defense counsel. (Def.'s Mot. at 39, 41-43, 45-47.)

Attorneys may reasonably rely on what their clients tell them and advocate for their interests accordingly, unless and until they have reason to believe that their clients are lying. Karpf, a partner in a reputable law firm and an attorney admitted to practice in this District, has certified that he relied upon what Plaintiff told him until he received documents in May 2015 that caused him to doubt her truthfulness. (Karpf Opp'n Br. at 25-26.) At that time, Karpf determined that "because of Plaintiff's misrepresentations and lack of willingness to cooperate during discovery he had to withdraw." (*Id.* at 28, 35.) While this Court is sympathetic to defense counsel's frustration regarding the particularly litigious nature of these proceedings, mere speculation about Karpf's motives or knowledge is insufficient to support a finding that he "unreasonably or vexatiously" multiplied the proceedings in this matter or violated his obligations under Rule 11. After a thorough review of the parties' papers, this Court is satisfied that Karpf acted in good faith to provide zealous representation to his client. Therefore, this Court will deny Defendant's Motion for Sanctions against him.

### 2. Abrams

Defendant also seeks sanctions against Abrams for attempting "to block" subpoenas served by Defendant on third parties, arguing that Abrams' interference "multiplied proceedings in an unreasonable and vexatious manner." (Def.'s Mot. at 47-49.) Defendant alleges that Kamens failed to comply with its subpoena "as a result of Abrams' April 28th letter." (Def.'s Mot. at 49.)

17

Neither this Court nor Defendant has any basis upon which to reach that conclusion. Kamens was required to provide documents and appear for a deposition *before* he received Abrams' letter, but appears independently to have refused to do so.[15]  Defendant fails to provide any support for its position that Kamens' subsequent refusal to comply with the subpoena was motivated or influenced by Abrams' later letters.  The record does indicate, however, that counsel for SDC treated Abrams' letter as "an objection to the turnover of documentation pursuant" to the subpoena, (Dkt. No. 239-1 Ex. 2), and that Defendant had to follow-up with SDC to obtain the documents it sought.  (Def.'s Mot. at 5-6, Dkt. No. 239-1 Ex. 3.)  Defendant does not argue that ARM refused to comply with its subpoena or that Abrams' letter had any impact on how ARM responded. Therefore, the record before this Court does not support the imposition of sanctions against Abrams.  Although his letter did cause SDC to delay its document production and required additional communication with defense counsel, that effort was not unreasonable or vexatious. Nor is there any indication that Abrams acted in bad faith.  Therefore, Defendant's Motion for Sanctions against Abrams will be denied.[16]

### B.  Summary Judgment on Defendant's Counterclaims

#### 1.  *Count I - Fraud (Employment Application and Résumé)*[17]

---

[15] Indeed, when Kamens was ultimately deposed in October 2015, he testified that he did not read Abrams' letter as an instruction "not to comply with the subpoena . . . ." (Dkt. No. 239-1 Ex. 1 at 12.)

[16] However, this Court cautions Abrams against contacting third-parties regarding their compliance with subpoenas issued by opposing counsel in future cases.  Such conduct is, at best, unwise and counterproductive.  At worst, as evidenced by decisions in other District Courts, it can expose counsel to the imposition of § 1927 sanctions.  *See, e.g.*, *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 795 (E.D. Pa. 2012) (sanctioning an attorney who sent advice letters to third-parties stating that he "expect[ed] your cooperation in refraining from providing documents and information that would result in an impermissible and unnecessary invasion of privacy"); *Fox Indus., Inc. v. Guorvich*, No. 03-5166, 2006 WL 2882580, at *2 (E.D.N.Y. Oct. 6, 2006) (sanctioning an attorney who wrote to third-parties requesting they not comply with a subpoena and describing the subpoena as "null and void as a matter of law and should not be complied with").

[17] Although Defendant seeks summary judgment on all of its counterclaims, its moving papers fail to include any mention of Count I which alleges that Plaintiff committed fraud as to her Employment Application and résumé. However, because Plaintiff's opposition brief addresses this counterclaim, and Defendant's Statement of Undisputed Facts refers to the underlying facts regarding Plaintiff's application for employment, this Court will treat it as fully briefed.

New Jersey common-law fraud requires: "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Farris v. County of Camden*, 61 F. Supp. 2d 307, 340 (D.N.J. 1999) (internal citations omitted).  Here, the record indicates that when applying for a position with Novartis, Plaintiff misrepresented her last job, created a fictitious supervisor, and exaggerated her prior salaries.  (Dkt. No. 209-4 ¶¶ 8-14.)  Plaintiff knows her own employment history and must have known that she was misstating material aspects of it when completing her employment application.  Because the purpose of applying for a job is to obtain employment, Plaintiff intended that Novartis would rely on her misrepresentations in determining whether to hire her.  Because the employment application contained a provision requiring applicants to certify the application was correct and to acknowledge that "falsification of any information is grounds for immediate dismissal . . . .," (Dkt. No. 209-4 Ex. 7 at NPC000024), it was reasonable for Novartis to rely on the accuracy of the information Plaintiff provided.  Novartis did rely on that information to determine that Plaintiff was an acceptable candidate and to prepare an appropriate compensation package, and was damaged by hiring a candidate that it would not have otherwise hired and by paying her more than her prior experience warranted.  (*Id.* ¶¶ 15-16.)  Therefore, this Court will grant Defendant's Motion for Summary Judgment as to Count One of its counterclaims and will deny Plaintiff's Cross Motion for Summary Judgment as to the same.

    *2.  Count III - Breach of Contract (Relocation Agreement)* [18]

---

[18] Defendant's moving papers also contain no reference to Count Two of its Counterclaims, which alleges fraud as to the Relocation Authorization Agreement.  Because Counts Two and Three share the same core essential facts, this Court deems Count Two to be part of Count Three and will dismiss as moot Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment as to Count Two.

"To state a claim for breach of contract, a plaintiff must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing there from; and (4) that the party stating the claim performed its own contractual obligations." *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 478 (D.N.J. 2014) (citing *Frederico v. Home Depot.*, 507 F.3d 188, 203 (3d Cir. 2007)).

The Relocation Agreement was a valid contract, signed by Plaintiff on March 3, 2010, and intended to provide her with logistical support and funds to move herself and her family closer to Defendant's Florham Park location.  (Dkt. No. 209-4 ¶ 18.)  Plaintiff accepted $26,000.00 in relocation funds, told Defendant she intended to relocate, but did not do so.  (*Id.* ¶¶ 18-19.)  Defendant lost monies it paid to Plaintiff to facilitate her move, and did not receive the anticipated benefit of having Plaintiff nearer to the office.  As such, Plaintiff breached her obligations under the Relocation Agreement and this Court will grant Defendant's motion for Summary Judgment as to Count Three of its Counterclaims, and deny Plaintiff's Cross-Motion for Summary Judgment as to the same.

### 3. Count IV - Breach of Contract (AIP)

Similarly, it is clear that Plaintiff and Defendant entered into a valid employment contract on or about March 3, 2010 when Plaintiff signed Novartis's offer of employment.  (Dkt. 209-4 Ex. 1.)  The terms of that employment were governed by, among other things, Novartis's Code of Conduct, Conflicts Policy and AIP, and Plaintiff's bonuses were conditioned upon her compliance with Novartis's internal rules and policies, including the Conflicts Policy.  (*Id.* Exs. 1, 3, 6.)  By accepting outside employment with Biomedical/Auxilium and Astellas, Plaintiff violated Defendant's rules regarding conflicts of interest by, and, in turn, breached her obligations under the AIP.  The AIP provides that any breach of that agreement requires  return

20

of the funds paid, permits the company to sue for "recovery of such proceeds on the basis of breach of contract" and exposes the breaching party to pay Novartis's "reasonable attorneys' fees and costs in recovering such amounts." (Dkt. No. 209-4 Ex. 6.) Because there is no genuine issue of material fact regarding Plaintiff's breach of her obligations under the AIP, this Court will grant Defendant's Motion for Summary Judgment on Count Four of Defendant's Counterclaims, and deny Plaintiff's Cross-Motion for Summary Judgment as to the same.[19]

    *4. Count V - Breach of Duty of Good Faith and Fair Dealing*

    New Jersey courts have recognized that an implied covenant of good faith and fair dealing exists in every contract. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1145 (N.J. 2001). This duty requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Ass'n Grp. Life, Inc. v. Catholic War Veterans of U.S.*, 239 A.2d 382, 384 (N.J. 1972) (internal citations omitted). The duty of good faith is "independent . . . and may be breached even where there is no breach of the contract's express terms." *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000), *rev'd, in part, on other grounds*, 253 F.3d 159 (3d Cir. 2001). The duty is breached if a party "acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387, 395 (N.J. 2005) (noting that

---

[19] Count Six of Defendant's Counterclaims is a claim of Unjust Enrichment, pled as an alternative grounds of recovery should this Court find that "the AIP is not an enforceable contract." (Def.'s Mot. at 57.) *See also Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982) (noting that pursuant to New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties."). Because this Court has found Plaintiff breached the AIP, it need not reach Defendant's unjust enrichment argument. As such, this Court will dismiss as moot Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment as to Count Six of Defendant's Counterclaims.

"Good faith conduct is conduct that does not 'violate community standards of decency, fairness or reasonableness'") (internal citation omitted).

By actively seeking out additional competing employment during her tenure with Novartis in violation of her contractual obligations, and then failing to disclose the same, Plaintiff violated her duty to act in good faith and to deal fairly with Novartis.  Plaintiff failed to provide her employer with her full attention, efforts and time, thus, depriving Defendant of the bargain it made with her.  As such, this Court will grant Defendant's Motion for Summary Judgment on Count Five of Defendant's Counterclaims, and deny Plaintiff's Cross-Motion for Summary Judgment as to the same.

5.  *Count VII - Misappropriation of Confidential and/or Proprietary Information*

Without providing a scintilla of proof in support of its position, Defendant asserts that, because Plaintiff held outside consulting jobs while employed by Novartis, it "is inconceivable that she did not misappropriate [Novartis's] confidential and proprietary information."  (Def.'s Mot. at 58.)  Defendant argues that such evidence must exist and that, but for Plaintiff's deception, it would certainly have been uncovered.  (Def.'s Mot. at 59.)  That, however, is not a basis upon which this Court can grant Defendant judgment in its favor.  Absent any facts supporting its position, this Court denies Defendant's Motion for Summary Judgment and grants Plaintiff's Cross-Motion for Summary Judgment as to Count Seven of Defendant's Counterclaims.

6.  *Count VIII - Breach of Duty of Loyalty and Breach of Conflict of Interest Policy*

To bring a claim for breach of the duty of loyalty under New Jersey law, a party must show: 1) an employee-employer relationship; 2) breach of the duty of loyalty; and 3) harm.  *See Canon Financial Services, Inc. v. Bray*, Civ. No. 14-3829(RBK)(KMW), 2015 WL 851816, at

*4 (D.N.J. Feb. 26, 2015) (citing *Cameco, Inc. v. Gedicke*, 724 A.2d 783 (N.J. 1999)).  An employee's duty of loyalty demands that he not "act contrary to the employer's interest" or "compete with his or her employer." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1168 (N.J. 2001).

Here, there is no dispute that the Plaintiff and Defendant had an employee-employer relationship.  It is also unquestionable that Plaintiff violated both her common law duty of loyalty and her contractual obligations under Novartis's Conflicts Policy.  Both prohibit Plaintiff from acting in a manner contrary to Novartis's interest or competing with the company.  The Conflicts Policy explicitly prohibits an employee from holding a "second job with or provid[ing] any services to a competitor of" Novartis or "engag[ing] in any outside employment or other activity which encroaches on the time or attention that should be devoted to [Novartis's] affairs, otherwise detracts from your ability to perform your responsibilities" or deprives Novartis of "your full loyalty."  (Dkt. No. 209-4 ¶ 3.)  By actively soliciting and accepting consulting positions with Novartis's competitors and subsequently billing hundreds of hours to them without disclosing or seeking approval for that outside work, Plaintiff impermissibly competed with her employer and divided the loyalty she owed Novartis.  (Dkt. No. 209-4 ¶¶ 61-91.)  It is also clear that Defendant was harmed.  Novartis paid Plaintiff for a full-time position, but Plaintiff siphoned off time she owed Novartis to other activities.  As such Defendant lost the money it paid her for time she did not commit to the company.  This Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment as to Count Eight of Defendant's Counterclaims.

## IV.    CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendant's Motion for Sanctions against Plaintiff and **DISMISSES** Plaintiff's claims; **DISMISSES AS MOOT** Defendant's Motion for Summary Judgment on all of Plaintiff's claims; **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Cross-Motion for Summary Judgment on Counts One, Three, Four, Five and Eight of Defendant's counterclaims; **GRANTS** Plaintiff's Cross-Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment as to Count Seven of Defendant's counterclaims only; **DISMISSES AS MOOT** Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment as to Counts Two and Six of Defendant's Counterclaims; **GRANTS** Defendant's motion for sanctions against Mr. Adesanya; and **DENIES** Defendant's motions for sanctions against Karpf and Abrams.  An Order consistent with this Opinion follows.

_s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Hon. Steven C. Mannion, U.S.M.J.
           Parties