**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AFOLUSO ADESANYA,<br><br>         Plaintiff,<br><br>v.<br><br><br>NOVARTIS PHARMACEUTICALS<br>CORPORATION,<br><br>         Defendants. | Case No. 2:13-cv-5564 (SDW) (SCM)<br><br>**OPINION**<br><br>June 5, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant Novartis Pharmaceuticals Corporation's ("Novartis" or "Defendant") application for reasonable attorneys' fees and costs and damages to be paid by *pro se* Plaintiff Dr. Afoluso Adesanya ("Plaintiff"), and her husband, Adenekan Hezekiah Adesanya ("Mr. Adesanya") (collectively, the "Adesanyas") which was filed on September 9, 2016. The Adesanyas opposed Novartis's application on October 12, 2016 and requested a stay pending appeal of the Court's August 15, 2016 Order granting Defendant's motion for sanctions and granting, in part, Defendant's motion for summary judgment. After considering the parties' written submissions, and for the reasons set forth below, this Court **GRANTS** Novartis's application subject to reductions, with Plaintiff to pay $457,040.22 and Mr. Adesanya to pay $23,714.00; **GRANTS** damages totaling $1,393,918.23; and **DISMISSES AS MOOT** the Adesanyas' motion to stay.

## I.   BACKGROUND AND PROCEDURAL HISTORY

As the parties are intimately familiar with the facts surrounding this case, this Opinion will address only those relevant to the present motion. This Court incorporates the August 15, 2016 Opinion as the relevant factual and procedural background. (Dkt. No. 251). At issue is Novartis's fee application which requests an award of attorneys' fees and costs amounting to $1,927,801.09 for representation by McCusker, Anselmi, Rosen & Carvelli, P.C. (hereinafter "the MARC Firm") and $4,002,190.38 in damages. (Dkt. Nos. 253, 270). After finding that Plaintiff willfully deceived Novartis and this Court in bad faith and manipulated the judicial process, this Court dismissed the Complaint, granted Novartis's motion for summary judgment as to Counts One, Three, Four, Five and Eight of its Counterclaims, and awarded sanctions against the Adesanyas. (Dkt. No. 252). The Adesanyas immediately filed an appeal with the Third Circuit which was denied because this Court had "not yet calculated the amount of damages" nor "the amount of monetary sanctions." (Dkt. Nos. 255, 264). In sum, the Order was not "final and appealable." (Dkt. No. 264).

In connection to Novartis's success, this Court provided the following Order:

> [Novartis] shall submit a certification of attorneys' fees and costs as it relates to the dismissal of Plaintiff's claims; . . . and a certification of attorneys' fees and costs incurred as to [Novartis's] motion for sanctions against Mr. Adesanya. Plaintiff and Mr. Adesanya shall submit any opposition within fifteen (15) days of the filing of [Novartis's] certification and [Novartis] shall have seven (7) days to reply. (Dkt. No. 252).

Novartis initially sought "$1,833,959.02 in attorneys' fees and costs" against Plaintiff and $138,234.79 against Mr. Adesanya. (Dkt. No. 253, Ex. A and C). Upon referral of this matter to Magistrate Judge Mannion for review, Novartis was directed to file a supplemental affidavit or declaration including "detailed timesheets for each attorney with descriptions of work performed and hours billed on each date for the fees and costs respectively sought against Plaintiff Adesanya

and her husband Mr. Adesanya." (Dkt. No. 265).  This Court also ordered Novartis to indicate the amount of billed and unbilled fees and costs. (*Id.*).

On February 28, 2017, Novartis submitted the Certification of John McCusker (hereinafter "McCusker Certification") which "supersedes and updates the amount of attorney's fees and costs [initially] requested." (Dkt. No. 270 ¶ 2).  At present, Novartis seeks $1,789,566.30 ($1,569,416.83 in billed fees plus an additional $220,149.47 in unbilled fees) to be paid by Plaintiff, and the same $138,234.79 to be paid by Mr. Adesanya. (Dkt. No. 270 ¶ 8).

For damages incurred in connection to the dismissal of Plaintiff's claims Novartis requests $4,002,190.38. (Dkt. No. 253-4 ¶ 3).  Specifically, Novartis seeks $1,670,323.80 on Count One (employment application and resume fraud); $25,818.71 on Count Three (breach of Relocation Agreement); $210,403 for Count Four (breach of Annual Incentive Plan or "AIP"); $1,670,323.80 on Count Five (breach of the duty of good faith and fair dealing); and $497,907.56 as to Count Eight (breach of duty of loyalty and Defendant's Conflict of Interest Policy).  (Dkt. No. 253 Ex. B ¶¶ 10-14).

## II.   DISCUSSION & ANALYSIS

Novartis seeks $1,927,801.09 in attorneys' fees and costs ($1,789,566.30 to be paid by Plaintiff and $138,234.79 to be paid by Mr. Adesanya), and a damage award of $4,002,190.38.[1] This Opinion will first assess the reasonableness of Novartis's fee application, then determine the damage award, and lastly address the Adesanyas' motion to stay.  Based on the below analysis which is summarized in Section III, this Court concludes that $480,754 in fees and costs shall be

---

[1] This Court notes that although Novartis seeks reimbursement of fees and costs, the application itself does not provide for fees separate from costs. Consistent with the evidence provided, the total award is provided as a single figure representing both fees and costs to be paid by Plaintiff and Mr. Adesanya.

paid by the Adesanyas; that $1,393,918 in damages shall be awarded; and that the motion to stay is dismissed as moot.

### A. Novartis's Fee Application

#### i.   Legal Standard

The law requires attorneys' fees or costs to be reasonable. *See* FED. R. CIV. P. 37.  The reasonableness of fees is determined by examining the attorney's reasonable hourly rate and the number of hours expended on the litigation. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  To determine the amount of fees, the Court must calculate the "lodestar" amount by multiplying the attorney's hourly rate by the number of hours spent performing the work.  *Id.*  As the moving party, Novartis bears the burden of proving its requested hourly rates and the hours it claims are reasonable.  *Id.* (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d. Cir. 1990)).  If the burden is sustained, the Adesanyas must rebut the reasonableness of the proposed fees with competent evidence.  *See id.* If "the adverse party raises specific objections to the fee request, the district court has a great deal of discretion to adjust the award in light of those objections." *Blakey v. Cont'l Airlines*, 2 F. Supp. 2d 598, 602 (D.N.J. 1998) (internal citations omitted). "Determining an appropriate award is not an exact science" and "[t]he facts of each individual case drive the amount of any award." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998).

#### ii.   Hourly Rates

Novartis bears the burden of establishing its requested hourly rates are reasonable.  In satisfying this initial burden, attorneys may not rest on their own affidavits to support a party's claim of reasonable fees.  Rather, they must submit evidence that the requested rates fall within the norm of attorneys in the relevant community. *See Rode,* 892 F.2d at 1183.  A reasonable hourly

rate is determined in reference to the prevailing market rates in the relevant community. *See Interfaith*, 426 F.3d at 708 (internal citation omitted). The "prevailing market rates in the relevant community" are determined by "assess[ing] the experience and skill of the prevailing party's attorneys and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" at the time the fee petition was filed. *L.J. v. Audubon Board of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (internal citation omitted). Accordingly, this Court only considers whether the present rates set forth in the McCusker Certification are reasonable. "Once a district court finds that the prevailing party has failed to sustain its burden with respect to a reasonable market rate, it must use its discretion to determine the market rate." *Id.* at 297 (internal citation omitted). If the initial burden is met, the opposing party can contest the rate with record evidence. *Id.* at 296.

The McCusker Certification outlines the fees sought for partners, John B. McCusker, Esq. ("McCusker") at $395/hour and Patricia Prezioso, Esq. ("Prezioso") at $390/hour; of counsel, Suzanne M. Murphy, Esq. ("Murphy") at $275/hour; and associates, Patrice LeTourneau, Esq. ("LeTourneau") at $250/hour, and Bianca M. Olivadoti, Esq. ("Olivadoti") at $185/hour. (Dkt. No. 270 ¶¶ 5-7). In opposition, the Adesanyas argue that the hourly rates set forth in the fee application are inconsistent because "no reasons were given" for the "substantial increase" in legal fees. (Dkt. No. 274-1 at 4). They also contend that while the supporting certification pertains to attorneys McCusker, Prezioso, Murphy, LeTourneau and Olivadoti, the accompanying time records show that "up to [seven] attorneys . . . plus external counsel" billed for this matter. (*Id.* at 5).

This Court finds that although hourly rates increased over the course of this litigation, the increases were not substantial. Furthermore, this Court only considers whether the *present rates*

set forth in the McCusker Certification are reasonable because attorneys' prevailing market rates are assessed *at the time the fee petition is filed*. *See L.J.*, 373 F. App'x at 296 (emphasis added). Novartis only seeks to recover fees for McCusker, Prezioso, Murphy, LeTourneau and Olivadoti. The additional attorneys who billed for this matter will not be considered.

Here, the McCusker Certification does not detail the prevailing rates for New Jersey attorneys comparable to those in this case. However, this Court exercises its discretion to fix a reasonable hourly rate by looking to recent cases in this District that have determined prevailing market rates. This Court's research reveals that Novartis's requested rates are consistent with comparable New Jersey attorneys of similar experience and skill, and fall below prevailing rates. *See Boles v. Wal-Mart Stores, Inc.*, No. 12-1762, 2015 U.S. Dist. LEXIS 102920, at *15-16 (D.N.J. Aug. 5, 2015) (approving rates of $400/hour for an employment and labor law attorney with over sixteen years' of experience and $250/hour for associate attorneys as "consistent with rates . . . that other courts in this District have approved") *aff'd*, 650 F. App'x 125 (3d Cir. 2016); *see also Chaaban v. Criscito*, No. 08-1567, 2013 U.S. Dist. LEXIS 58051, at *34-35 (D.N.J. Apr. 3, 2013) (finding that the requested hourly billing rates "ranging from $350-$500 for partners; $225-$300 for associates; and $105-$130 for paralegals are well within, if not below, the prevailing rates of New Jersey").

The McCusker Certification sufficiently outlines that McCusker is the Director/Partner of the MARC Firm who specializes in employment litigation and has practiced law since 1982; that Prezioso, also an experienced attorney since 1988, has focused on employment litigation and has been a partner at the firm for nine years; and that Murphy, who is of counsel, and LeTourneau and Olivadoti, both associates, assisted with this matter. (Dkt. No. 270 ¶¶ 5-7). Since no contesting evidence is provided by the Adesanyas, this Court approves the requested hourly rates ranging

from $390-395 for partners and $185-$275 for of counsel and associates as they are comparable to the prevailing rates of New Jersey attorneys with similar experience and skill.

    iii.   <u>Time Expended</u>

Having found the requested hourly rates reasonable, this Court must next consider whether the number of hours spent on the litigation are reasonable.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary" and should be excluded. *Rode*, 892 F.2d at 1183 (internal citations omitted). In opposition, the Adesanyas contend that the fee application is "riddled with misrepresentations, false entr[ies], illegal acts, redactions, duplications, and non-attorney work." (Dkt. No. 274-1 at 3).  This contention is without merit, as the documents submitted by the MARC Firm support the instant fee application. This Opinion shall address the reasonableness of the time claimed for the services performed in relation to the dismissal of Plaintiff's claims and the motion for sanctions against Mr. Adesanya. *See Maldonado v. Houstoun*, 256 F.3d 181, 185 (3d Cir. 2001).

In making this determination, the Court is mindful that fees and costs incurred during litigation are not usually recoverable.  *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 (1978) ("It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees.") (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)).  One exception to this general rule is when "a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal marks omitted).  "In this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal marks omitted).

While discovery was at all times "contentious and marked by delay," in large part, this Court will not award fees and costs that were incurred while Plaintiff was represented by counsel. Plaintiff's attorney, Ari Karpf ("Karpf"), relied upon Plaintiff's misrepresentations in prosecuting her case.  This continued until May 2015, at which time he received documents that caused him to doubt Plaintiff's truthfulness.[2]  (Dkt. Nos. 251 at 17, 232 at 25-26).  Beyond that time, Plaintiff's claims had little chance of success yet she continued to thwart Novartis's efforts, "forc[ing] Defendants to issue and defend third-party subpoenas and incur additional effort and expense to obtain information that Plaintiff possessed and should have provided." (Dkt. No. 251 at 13-14). For these reasons, the fees and costs incurred prior to May 2015 are recoverable only in part because ultimately, Plaintiff's dogged pursuit of baseless claims and fraud led to the dismissal of the Complaint.[3]   With respect to Mr. Adesanya, the fees and costs sought from him prior to his counsel's withdrawal on September 29, 2015 are included in Plaintiff's fees and costs and cannot also be paid by him.  (Dkt. No. 103).  This Opinion focuses on the fees and costs incurred in relation to Mr. Adesanya's false testimony and his failure to comply with Defendant's document demands.  It is within this backdrop that this Court addresses the Adesanyas' objections that counsel provided "vague time entries" and that the MARC Firm performed duplicative work in light of "the simplicity of legal questions involved." (Dkt. No. 274-1 at 5-7, 10-12).

As explained more fully below, Novartis's fee application presents some concerns due to the generic manner in which tasks were billed by multiple attorneys and the lack of detail pertaining to the fees and costs sought from Plaintiff versus the fees and costs sought from Mr.

_____

[2] Karpf moved to withdraw on July 20, 2015.  From August 28, 2015 forward, Plaintiff proceeded *pro se* in this matter. (Dkt. No. 251 at 7).

[3] This general proposition does not apply to Novartis's fees and costs incurred as a result of the Adesanyas' obfuscation of discovery.  As outlined in Section A(v), a portion of the fees and costs leading up to May 2015 are subject to reimbursement.

Adesanya.  *See Blakey*, 2 F. Supp. 2d at 604 (noting that "[t]he presentation of billable hours should be in sufficient detail to permit the Court to determine how the hours were divided among various attorneys"); *see also Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 181 (3d Cir. 2001) (internal citation omitted). This Court therefore considers the initial September 2016 fee certification in addition to the superseding McCusker Certification which "updates the amount of attorney's fees and costs [initially] requested." (Dkt. No. 270 ¶ 2).

Notwithstanding, performing an entry-by-entry analysis remains unmanageable. *Cf. Evans v. Port Authority of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) (stating that fee requests are subject to a "thorough and searching analysis" requiring the Court to "go line, by line, by line" through the billing records).  Instead, this Court reviewed the billing invoices containing monthly cumulative totals, considered whether tasks were necessary in relation to the Adesanyas' objections, and determined the number of hours reasonably needed to perform the work.  *See Maldonado*, 256 F.3d at 186-88.  Presently, the MARC Firm billed approximately 7,702 hours, but as shown in Section III of this Opinion, 3,594 hours were reasonably expended to obtain dismissal of Plaintiff's claims and an award of sanctions against Mr. Adesanya.

    iv.   <u>Vague Time Entries</u>

The Adesanyas challenge the hours expended based upon "extraordinarily" redacted and "vague time entries." (Dkt. No. 274-1 at 5-7).  "The Court may . . . deduct hours that are inadequately documented." *Blakey*, 2 F. Supp. 2d at 604 (internal citation omitted).  A fee petition must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." *Loughner*, 260 F.3d at 181 (internal citation omitted).

While certain redactions are necessary to protect privileged or confidential information, a portion of Novartis's billing records are heavily redacted or do not contain enough specificity to

allow this Court to assess the reasonableness of the hours claimed for the work performed.  For example, numerous entries bill for internal meetings, team strategy sessions, and "legal research" but only provide general descriptions. As a result, this Court reviewed each invoice from May 2015 through November 2016 and totaled the redacted or otherwise vague entries. (Dkt. Nos. 270-22 Ex. V through 270-31 Ex. EE). The table below demonstrates that 223.4 hours in vague billing entries will be deducted from Novartis's recovery, amounting to a total deduction of $53,818 ($26,909 to be deducted from the fees and costs owed by Plaintiff; $26,909 to be deducted from fees and costs owed by Mr. Adesanya).

| Month | Hours Billed | Hours Deducted | Hours Reasonably Spent |
|-------|--------------|----------------|------------------------|
| May 2015 | 447.9 | 25.4 | 422.5 |
| June 2015 | 325.6 | 33.9 | 291.7 |
| July 2015 | 498.3 | 13.8 | 484.5 |
| August 2015 | 261.8 | 22.5 | 239.3 |
| September 2015 | 302.7 | 24.0 | 278.7 |
| October 2015 | 268.7 | 27.4 | 241.3 |
| November 2015 | 148.3 | 23.4 | 124.9 |
| December 2015 | 128.7 | 10.8 | 117.9 |
| January – August 2016 | 841.2 | 29.3 | 811.9 |
| August – November 2016 | 85.9 | 12.9 | 73.0 |
| **TOTAL** | **3309.1** | **223.4** | **3085.7** |

v.   <u>Discovery Misconduct</u>

Contrary to the Adesanyas' general arguments that Novartis blocked discovery, this Court previously found that both Plaintiff and Mr. Adesanya interfered with the discovery process and provided false and misleading testimony. (Dkt. Nos. 274-1 at 12, 16, 251 at 13-16). Notably, the Adesanyas' misconduct forced Defendants to issue and defend third-party subpoenas and incur additional effort and expense to obtain information that Plaintiff possessed and should have provided. Although fees and costs incurred prior to May 2015 discovery are generally not recoverable because they were incurred in the normal course of litigation, this Court finds that the

additional fees and costs sustained and caused by the Adesanyas' obfuscation of discovery are subject to reimbursement.

Discovery began in this case in September 2014. Upon review of the billing records, Novartis expended approximately 2,590 hours and incurred $768,496 from October 1, 2014 to May 30, 2015. (Dkt. Nos. 270-15 Ex. O through 270-22 Ex. V). The majority of Novartis's expenses for this time period were incurred in the normal course of these particularly litigious proceedings. However, it is important to note that during this time, Plaintiff's refusal to produce documents forced Novartis to spend additional resources in connection with the following: issuing a subpoena to Mr. Adesanya to obtain documents concerning Plaintiff's joint ownership of Global Drug Safety & Surveillance, Inc. a/k/a LaRon Pharma, Inc. ("LaRon") and membership in Ron Nuga, LLC ("Ron Nuga"); filing applications with the court in attempts to obtain Plaintiff's compliance with discovery; addressing challenges to, and issuing, third-party subpoenas to Klein Hersh, the employment agency used by Plaintiff during her employment, Ron Nuga's insurance broker, the Adesanyas' tax preparer, Ronald Kamens ("Kamens"), and Wells Fargo for financial documents that should have been produced; and reviewing tax documents which had previously been denied under oath. (Dkt. No. 253 Ex. A ¶¶ 9-11).

Based upon a line-by-line analysis, Novartis expended 143.2 additional hours as a result of Plaintiff's discovery misconduct. Plaintiff is therefore responsible for $40,098 in fees and costs she caused Novartis to expend to obtain information she possessed and should have provided.

| Month | Recoverable Hours |
|---|---|
| October 2014 | 19.8 |
| November 2014 | 15.9 |
| December 2014 | 10.8 |
| January 2015 | 10.2 |
| February 2015 | 8.3 |
| March 2015 | 29.4 |
| April 2015 | 16.4 |

| | |
|---|---|
| May 2015 | 32.4 |
| **TOTAL** | **143.2** |

Novartis also incurred additional expenses due to Mr. Adesanya's interference with discovery. Mr. Adesanya is responsible for a portion of the $40,237 in fees and costs incurred from September 1, 2015 to October 31, 2015 which are presently sought by Novartis. (Dkt. No. 253 Ex. C ¶ 8). During this time period, Mr. Adesanya falsely certified that he and his wife did not possess any relevant documents regarding LaRon or Ron Nuga even though thousands were located in their home. (Dkt. No. 209-4 ¶¶ 109, 112, 132-133). This Court also ordered Mr. Adesanya to produce the subpoenaed documents on October 6, 2015 and October 30, 2015 yet he did not comply. (Dkt. Nos. 109, 115). As a result of his actions, Novartis was forced to issue a supplemental subpoena to Wells Fargo to obtain Ron Nuga's financial documents that were in the Adesanyas' possession; engage a tax expert to assist in analyzing Wells Fargo's documents; and submit requests to the court to hold Mr. Adesanya in contempt and/or impose sanctions against him. (Dkt. No. 253 Ex. C ¶ 8). For this work, Novartis reasonably spent 114.1 hours and $35,599.75 is reimbursable. (Dkt. Nos. 270-26 Ex. Z, 270-29, Ex. AA). Accounting for these adjustments, the $40,237 in fees and costs sought from Mr. Adesanya will be reduced by $4,637.25, resulting in a net amount due by Mr. Adesanya of $35,599.75.[4]

| Month | Recoverable Hours |
|---|---|
| September 2015 | 50.6 |
| October 2015 | 63.5 |
| **TOTAL** | **114.1** |

    vi.   Excessive, Duplicative, or Unnecessary Expenditures

---

[4]    Accordingly, this Court will deduct $35,599.75 from the total amount of fees and costs to be paid by Plaintiff so as to not duplicate Novartis's recovery. (*See infra* p. 26.)

The Adesanyas maintain that in light of the "simplicity of the legal questions involved" and Plaintiff's ultimate status as a *pro se* litigant, Novartis's "massive defense team" of four to six attorneys was excessive and resulted in duplicative efforts throughout this litigation. (Dkt. No. 274-1 at 10-12). A reduction for duplicative work "is warranted only if the attorneys are *unreasonably* doing the same work." *Rode*, 892 F.2d at 1187 (emphasis added) (internal citation omitted). The Third Circuit has held that deductions for overstaffing are warranted and "should not be included in a request for counsel fees from an adversary" because "in many cases, the attendance of additional counsel representing the same interests as the lawyers actually conducting the deposition is wasteful." *Planned Parenthood of Central N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 943 (3d Cir. 1995)).

While a private client may wish to pay for multiple attorneys to merely attend hearings on that client's behalf, this practice is not necessarily reasonable when they are to be paid by the other party to the proceedings. *Halderman*, 49 F.3d at 943. However, where the case involves complex legal questions and the declarations submitted in support of the fee application demonstrate various attorneys were assigned specific tasks, claims of overstaffing have been rejected. *See Planned Parenthood of Central N.J.*, 297 F.3d at 272. "Even if the attorneys had worked on similar tasks, this would not be per se duplicative" because "careful preparation often requires collaboration and rehearsal." *Id.* (internal citations omitted).

### 1. Court Conferences

While the Adesanyas do not provide specific examples to support their position that four to six attorneys litigating against Plaintiff was excessive, this Court's review of the billing records reveals that reductions to the lodestar are warranted for overstaffing court appearances. In total,

three to four attorneys billed for a total of 159 hours or $45,120 in connection to five court appearances. In May, July, and August of 2015, Novartis expended over 86 hours and billed for $25,066 with respect to two court appearances. (Dkt. Nos. 270-22 Ex. V, 270-24 Ex. X, 270-25 Ex. Y). While "careful preparation often requires collaboration and rehearsal," this Court finds that the attendance of two associates (LeTourneau and Olivadoti) was unnecessary where two partners (McCusker and Prezioso) were present. For example:

- For a May 5, 2015 status conference, McCusker, LeTourneau, Prezioso, and Olivadoti billed $8,956 for 28.8 hours of work. All attorneys except Olivadoti attended the conference. (Dkt. No. 270-22 Ex. V).
- The same four attorneys spent 17.3 hours or $4,466 preparing for a July 2015 conference which was ultimately adjourned to August 28, 2015. (Dkt. No. 77). Counsel spent an additional 40 hours or $11,644 preparing for the new conference date. (Dkt. No. 270-25 Ex. Y). Again, all attorneys except Olivadoti appeared in court. For this work, counsel spent over 57 hours and billed $16,110. (*Id.*).

Novartis may have agreed to pay for multiple attorneys to attend hearings on their behalf, but it is not necessarily reasonable for the Adesanyas to bear this extra expense. *See Halderman*, 49 F.3d at 943. For these reasons, this Court deducts additional counsels' (LeTourneau and Olivadoti) attendance as well as their time spent preparing and strategizing for the outlined conferences as duplicative of McCusker and Prezioso's work. After adjusting for additional counsels' attendance and preparation, this Court concludes that 31 out of 86 hours were reasonably expended in connection with the May 5, 2015 and August 28, 2015 conferences (15 and 16 hours, respectively). Plaintiff's fees and costs shall be reduced by $12,835, with $3,072 appropriated from the May 5, 2015 conference and $9,763 from the August 28, 2015 conference.

Similarly, for conferences held after Plaintiff entered her *pro se* appearance, this Court finds that only one partner's attendance (either McCusker or Prezioso) and the work of one additional attorney to prepare for the below conferences was reasonably necessary. Following

14

Karpf's withdrawal, this Court conservatively estimates that Novartis spent over 73 hours preparing for, and attending three court conferences which cost $20,053.

- The Court held oral argument on Novartis's motion to compel discovery on October 2, 2015. Three attorneys (McCusker, Prezioso, Olivadoti) spent 16 hours preparing, strategizing, and attending the conference which lasted 90 minutes. (Dkt. No. 270-27 Ex. AA). This cost approximately $5,218.  Together, McCusker and Prezioso billed for 6.5 hours to prepare for, and attend, the conference.
- McCusker, Prezioso, and Olivadoti spent over 26 hours at $6,898 preparing for a November 6, 2015 status conference that lasted 120 minutes. Both partners (McCusker and Prezioso) attended and billed for a total of 8.2 hours.  (Dkt. No. 270-28 Ex. BB).
- In January 2016, three attorneys (Prezioso, Olivadoti, Murphy) spent 31 hours totaling $7,937 in preparation for a court conference which was attended by Prezioso and lasted for 95 minutes. (Dkt. No. 199). Together Prezioso and Murphy billed for 14.5 hours. (Dkt. Nos. 270-29 Ex. CC, 270-30 Ex. DD).

With regard to the October 2015, November 2015, and January 2016 conferences, Novartis reasonably and respectively spent: 6.5 hours ($2,561) by McCusker and Prezioso; 8.2 hours ($4,204) by McCusker and Prezioso; and 14.5 hours ($4,884) by Prezioso and Murphy.  In total, Novartis reasonably spent 29 hours such that $11,650 is reimbursable.  Accordingly, a total deduction of $8,403 shall be evenly split from the fees and costs owed by Plaintiff and Mr. Adesanya.

### 2.  Depositions

The Adesanyas argue that counsel "wasted" 7.2 hours preparing for the deposition of Dr. Alessandro Riva ("Dr. Riva"), Novartis's Global Head of Oncology, and another 11.2 hours attending his deposition which lasted just 40 minutes. (Dkt. Nos. 274-1 at 14-15).  This Court disagrees.  A review of the billing records reveals that together, McCusker and LeTourneau spent *under* 9 hours preparing for, and conducting, Dr. Riva's deposition, the purpose of which was to develop the facts of this case. (Dkt. No. 270-15 Ex. O) (emphasis added). This time was reasonably spent and a deduction is therefore inappropriate.

Upon further review of the billing records; however, a reduction in time is warranted for overstaffing three or more attorneys at the depositions of Valerie Acito ("Acito"), Novartis's Global Head of Human Resources, Annick Krebs ("Krebs"), Plaintiff's Manager, and Kamens, the Adesanyas' Tax Preparer.   Three to four attorneys spent over 153 hours preparing, strategizing, and attending the depositions of these individuals and billed $44,332.

- From May to June 2015, up to four attorneys (McCusker, Prezioso, LeTourneau, Olivadoti) interviewed Acito, prepared for, conducted, and attended Acito's deposition. (Dkt. Nos. 270-22 Ex. V, 270-23 Ex. W). For this work, counsel spent over 72 hours or $20,841.
- In May 2015, four attorneys (McCusker, Prezioso, LeTourneau, Olivadoti) spent over 49 hours or $13,513 with respect to the deposition of Krebs. (Dkt. No. 270-22 Ex. V).
- For the Kamens deposition in October 2015, McCusker, Prezioso, and Olivadoti expended 32 hours and billed for $9,978. (Dkt. No. 270-27 Ex. AA).

Based on the number of sophisticated attorneys and the nature of the legal issues involved, only two attorneys were reasonably needed to prepare for, conduct, and provide assistance at the depositions of Acito, Krebs, and Kamens. Beyond the two attorneys who deposed the witnesses and thus performed the majority of the work, the billing records demonstrate that the remaining one or two attorneys duplicated preparation and strategizing efforts.   For these reasons, this Court finds that 119 hours or $36,186 was reasonably spent in connection with the depositions of: (1) Acito, 64.9 hours ($19,469) by McCusker and LeTourneau; (2) Krebs, 31.8 hours ($10,531) by McCusker and LeTourneau; and (3) Kamens, 22.8 hours ($6,186) by Prezioso and Olivadoti. Subject to these adjustments, Plaintiff's fees and costs shall be reduced by $4,354 in connection to the Acito and Krebs depositions.   Mr. Adesanya's fees and costs shall be reduced by $3,792 for the Kamens deposition.

    vii.   <u>Invoices Reflecting Flat Fee Payments</u>

The Adesanyas argue that billing invoices containing flat fee payments for the periods of December 17, 2015 to January 7, 2016 and January 8, 2016 to August 16, 2016 conflict with the

16

actual amount Novartis billed. (Dkt. No. 274-2 Ex. A at 13-14). They also argue that any time billed after March 2016 should be ignored because discovery was completed and motions for summary judgment were submitted. (*Id.*). While the Adesanyas' contentions are without merit, Defendant cannot recover for any unbilled costs. *See Maldonado*, 256 F.3d at 184 ("[h]ours that would not generally be billed to one's own client are not properly billed to an adversary").

Novartis was not billed for $220,149.47 in fees and costs. "Due to the extraordinarily litigious nature of this case," the MARC Firm "absorbed $54,569.09 in attorneys' fees and costs incurred from December 1, 2015, through December 16, 2015." (Dkt. No. 270 ¶ 4). Novartis and the MARC Firm also entered into two flat fee arrangements for legal services rendered between December 17, 2015 and January 7, 2016 ($45,000 flat fee) and January 8, 2016 to August 16, 2016 ($50,000 flat fee). (Dkt. No. 270 ¶ 4). The "true cost of the services provided" during these two time periods amounted to $35,989.82 and $224,590.56, respectively, totaling $220,149.47 in unbilled services (cost of services less the flat fee payments). (Dkt. No. 270 ¶ 4). Since Novartis and the MARC Firm chose to enter into two flat fee agreements rather than bill and pay for the true costs of services, Novartis cannot now recover the $220,149.47 unbilled costs from Plaintiff.

On balance, this Court finds that $480,754, with $457,040 apportioned to Plaintiff and $23,714 apportioned to Mr. Adesanya, reasonably compensates Novartis for the fees and costs incurred regarding the dismissal of Plaintiff's claims and sanctions against Mr. Adesanya. While this Court is cognizant of the extensive efforts Novartis expended in litigating against Plaintiff's frivolous claims and enduring Mr. Adesanya's impeding conduct, $480,754 is the product of a reasoned assessment of the fees and costs incurred based on the evidence and certifications

submitted for review.[5]  In addition to the above analysis, an outline of the fees and costs to be paid

by the Adesanyas is set forth in Section III of this Opinion.

**B. Damages**

Novartis seeks $4,002,190.38 in damages resulting from Plaintiff's employment

application and resume fraud (Count One); breach of Relocation Agreement (Count Three); breach

of AIP (Count Four); breach of the duty of good faith and fair dealing (Count Five); and breach of

the duty of loyalty and Novartis's Conflict of Interest Policy (Count Eight). (Dkt. No. 253, Ex. B

¶ 3).  With respect to Counts One and Five, Novartis requests $1,140,178 in cash compensation

and $530,144 in company benefits.  (*Id.* ¶¶ 10, 13).  Based on the evidence submitted, this Court

cannot clearly deduce what Novartis considered in arriving at these figures. For example, while it

is evident that insurance and retirement benefits constitute "company benefits," other aspects of

Plaintiff's total compensation package are not as obvious. The accompanying certification does

not lessen the ambiguity as it only states the total amounts sought.  To the best of this Court's

ability, Plaintiff's payroll earnings, W-2s, and total compensation package were considered in

determining the damages award.  For the reasons that follow, this Court awards $1,393,918.23 for

Novartis's successful Counterclaims.

i.    Count I – Fraud (Employment Application and Resume)

Novartis seeks a full return of $1,670,323.80 ($1,140,178.85 in cash compensation plus

$530,144.95 in company benefits) paid over the course of Plaintiff's tenure as a result of her fraud.

(*Id.* ¶ 10).  "New Jersey . . . recognizes benefit-of-the-bargain damages in fraud cases." *McConkey*

*v. Aon Corp.*, 804 A.2d 572, 588 (N.J. 2002).  "In a case involving the fraudulent inducement of

---

[5] Notably, this Court could not distinguish the work each attorney performed in relation to the
fees and costs sought from Plaintiff as opposed to the fees and costs sought from Mr. Adesanya.

an employment contract, under "the benefit-of-the-bargain" damage rule "the defrauded [employer] is entitled to such damages as will most nearly approximate the benefits he would have realized under the contract had the representations which induced him to contract been true." *Id.* at 587 (internal citations omitted); *see also Shulton, Inc. v. Optel Corp.*, 698 F. Supp. 61, 64 (D.N.J. 1988) (explaining that the "benefit of the bargain formula" is "the difference between the fraud induced price and the price plaintiff would have received absent the fraud").

Here, while Novartis is entitled to damages it suffered for hiring and paying Plaintiff more than her experience warranted, Plaintiff is also entitled to the reasonable value of her services. *See* Restatement (Second) of Agency, § 469, comment c ("[a]n agent who obtains h[er] employment by fraud, as by misrepresenting that [s]he has had experience, is not entitled to compensation at the contract rate, although [s]he may be entitled to the reasonable value of h[er] services"). In this case, Plaintiff conferred a benefit to Novartis as a "cross-disciplinary team" member who "worked on different aspects of drugs in various stages of development," and she is entitled to the reasonable value of the services she rendered. (Dkt. No. 209-4 ¶ 17); *see Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992) (explaining that a party who confers a benefit with a reasonable expectation of payment is entitled to recoup the reasonable value of services rendered). While it is nearly impossible to delineate between Plaintiff's reasonable compensation and the money Novartis lost by relying on her misrepresentations, the following analysis most nearly approximates the benefits Novartis would have realized had the representations which induced it to hire Plaintiff been true. *See McConkey*, 804 A.2d at 587 (internal citations omitted).

Under the benefit-of-the-bargain approach, this Court finds that determining the supplemental salary Novartis paid to Plaintiff as a result of her falsification of information is an appropriate starting point. In fashioning Plaintiff's base salary of $243,000 in 2010, Novartis

relied on her exaggerated prior salaries ($315,000 annual income at LaRon) and misrepresentations of her previous experience. (Dkt. Nos. 209-4 ¶¶ 9, 11, 15, 253 Ex. B ¶ 6).  Specifically, Novartis increased Plaintiff's signing bonus from $25,000 to $35,000 and paid another $10,000 due to her representations that she was "leaving money on the table" at LaRon.  (Dkt. No. 209-4 ¶ 15).  In reality, Plaintiff did not earn any income from LaRon, other than $127,500 in 2008. (Dkt. No. 209-4 ¶ 11).

Based on this evidence, this Court calculates the salary that Novartis would have paid to Plaintiff is a $198,000 base salary in 2010 ($243,000 less the $35,000 signing bonus and $10,000 competitive offer).  This Court then accounted for annual increases in the contract rate of 1.5%, 2%, and 1% in the first three years, respectively, and thereafter adjusted Plaintiff's base salary amount for each subsequent year. In addition to the annual salary increases, the table[6] below illustrates the money actually paid to Plaintiff (contract rate), the salary that would have been paid to her absent her misrepresentations (projected salary), and the benefit she received because of her fraud (difference). In sum, Novartis is entitled to recover $184,317 it paid to Plaintiff in reliance on her false statements.

|  | Increase in Salary | Compensation Paid (Contract Rate) | Projected Salary | Difference |
|---|---|---|---|---|
| 2010 |  | $  243,000.00 | $  198,000.00 | $  45,000.00 |
| 2011 | $ 3,645.00 (1.5%) | $  246,645.00 | $  200,970.00 | $  45,675.00 |
| 2012 | $ 4,933.00 (2.0%) | $  251,578.00 | $  204,989.48 | $  46,588.52 |
| 2013 | $ 2,516.00 (1.0%) | $  254,094.00 | $  207,039.56 | $  47,054.44 |
| **TOTAL** | **$ 11,094.00** | **$  995,317.00** | **$  810,999.04** | **$ 184,317.96** |

---

[6] The numbers in this table were generated from Plaintiff's base salary which was pulled from Plaintiff's Total Compensation Package. (Dkt. No. 253 Ex. B ¶ 6).

Plaintiff must also repay the annual increase in cash compensation received from 2010 to 2013, which equals $11,094. (*Id.* ¶ 16). This is necessary given that Novartis "would not have hired Plaintiff if it knew about the numerous, significant misrepresentations in Plaintiff's application for employment and resume." (Dkt. No. 209-4 ¶ 16). Novartis is therefore entitled to repayment of $45,000 (signing bonus plus competitive offer), $184,317 (the benefit Plaintiff received as a result of her fraud), and $11,094 (total increase in salary), totaling $240,411 in cash compensation. Given the lack of clarity as to what Novartis considered in fashioning the cash compensation it seeks, $240,411 best approximates what Novartis would have received absent Plaintiff's fraud. This amount does not entitle Plaintiff to compensation at the contract rate and importantly, returns the benefit she received while accounting for the reasonable value of services she performed.

Next, this Court concludes that Novartis is entitled to $418,377 for retirement and other company benefits paid. Upon review of Plaintiff's total compensation package for 2010 through 2013, this Court totaled the amount in benefits Novartis contributed on Plaintiff's behalf and adjusted for the amounts Plaintiff contributed. Accordingly, Novartis is entitled to full reimbursement of $212,347 in equity, $4,000 in additional company benefits ($1,000 paid per year), and $40,156 for Plaintiff's Defined Contributed Plan (an investment funded 100% by Novartis). (Dkt. No. 253 Ex. B ¶ 6, citing Ex. 3). Plaintiff did not contribute in any form to these savings. By comparison, Plaintiff did contribute to her insurance and retirement benefits. After adjusting for Novartis's contribution to Plaintiff's insurance and retirement benefits, Plaintiff shall also pay $161,873 as detailed in the immediately succeeding table.

|  | Contributed by Novartis | Contributed by Plaintiff | Difference |
|---|---|---|---|
| Insurance Benefits | $      15,724.24 | $        3,172.85 |  |
| Retirement Benefits | $      25,362.10 | $      22,295.10 |  |
| 2010 Total | $      41,086.34 | $      25,467.95 | $    15,618.39 |

| Insurance Benefits | $ | 21,384.75 | $ | 3,832.54 | | |
| Retirement Benefits | $ | 52,983.35 | $ | 23,597.23 | | |
| 2011 Total | $ | 74,368.10 | $ | 27,429.77 | $ | 46,938.33 |
| Insurance Benefits | $ | 21,844.00 | $ | 4,124.00 | | |
| Retirement Benefits | $ | 55,785.00 | $ | 24,292.00 | | |
| 2012 Total | $ | 77,629.00 | $ | 28,416.00 | $ | 49,213.00 |
| Insurance Benefits | $ | 23,444.00 | $ | 4,491.00 | | |
| Retirement Benefits | $ | 58,380.00 | $ | 27,229.00 | | |
| 2013 Total | $ | 81,824.00 | $ | 31,720.00 | $ | 50,104.00 |
| **TOTAL** | **$** | **274,907.44** | **$** | **113,033.72** | **$** | **161,873.72** |

For damages suffered by hiring and paying Plaintiff more than her experience warranted, Novartis shall be reimbursed $240,411 in cash compensation plus $418,377 in company benefits amounting to $647,694.

### ii.   Count III – Breach of Contract (Relocation Agreement)

Novartis hired Plaintiff with an understanding that she would relocate closer to its Florham Park office and offered her money to do so.  (Dkt. No. 209-4 ¶ 18).   Under the Relocation Agreement, Plaintiff accepted $26,818.71, told Novartis she intended to relocate, and failed to do so. (*Id.* ¶ 19, 250 Ex. B ¶ 11 citing Ex. 1 and 4).  Due to Plaintiff's breach, Defendant lost the relocation funds it paid to her and did not receive the anticipated benefit of having Plaintiff closer to its desired office.  Thus Novartis shall be refunded $26,818.71 as to Count Three.

### iii.   Count IV – Breach of Contract (Annual Incentive Plan or "AIP")

Subject to Plaintiff's "adherence to and compliance with" Novartis's rules and policies, bonuses were available and paid to the Plaintiff under the AIP.  (Dkt. No. 209-4 ¶¶ 6-7).  This Court previously found that Plaintiff was in violation of these policies from the very start of her employment and breached the AIP by accepting outside employment positions with Biomedical/Auxilium and Astellas. (Dkt. No. 251 at 3-4, 20).  Under the AIP, "any breach . . . requires return of the funds paid, permits the company to sue for 'recovery of such proceeds on the basis of breach of contract' and exposes the breaching party to pay Novartis's 'reasonable

attorneys' fees and costs in recovering such amounts.'" (Dkt. No. 209-4 Ex. 6). Notwithstanding the requested fees and costs addressed in Section A of this Opinion, Novartis paid a total of $210,403 ($57,605 in 2011; $70,343 in 2012; and $82,455 in 2013) in bonuses to Plaintiff under the AIP. (Dkt. No. 253 Ex. B ¶ 12). Plaintiff's bonuses were conditioned upon her compliance with Novartis's internal rules and policies, including the Conflicts Policy, and she was in violation of these policies at the outset of her employment. Novartis is therefore entitled to full repayment of the $210,403 in bonuses paid to Plaintiff during her tenure.

      iv.   <u>Count V – Breach of Duty of Good Faith and Fair Dealing</u>

Novartis requests $1,670,23.80 ($1,140,178.85 in cash compensation plus $530,144.95 in retirement and other company benefits) paid to Plaintiff as a result of her breach of the duty of good faith and fair dealing. (*Id.* ¶¶ 10, 13). In granting summary judgment on Count Five of Defendant's Counterclaims, this Court held that Plaintiff violated her duty to act in good faith and to deal fairly with Novartis by "actively seeking out additional competing employment during her tenure . . . in violation of her contractual obligations" and "fail[ing] to provide her employer with her full attention, efforts and time." (Dkt. No. 251 at 22). This conduct comports with the conduct that resulted in Plaintiff's breach of the Relocation Agreement (Count Three) and AIP (Count Four). As this Court has already awarded damages resulting from Plaintiff's breach of both agreements, constructing a damages award for her breach of the implied covenant of good faith and fair dealing would impermissibly result in a duplicative damages award. *See Kurnik v. Cooper Health Sys.,* No. A-4686-06T1, 2008 N.J. Super. Unpub. LEXIS 2267, at *63-64 (Super. Ct. App. Div. July 24, 2008) (finding that the lower court erred by allowing the jury to award separate damages for breach of contract and breach of the implied covenant of good faith and fair dealing "where the two breaches arose from . . . identical conduct"); *see also Wade v. Kessler Inst.*, 778

A.2d 580 (N.J. 2001), *aff'd as modified*, 798 A.2d 1251 (N.J. 2002).  Thus, an assessment of separate damages as to Count Five is not proper.  The total damages already awarded adequately compensate Novartis for Plaintiff's breach of duty of good faith and fair dealing.

     v.    Count VIII – Breach of Duty of Loyalty and Conflict of Interest Policy

As a result of Plaintiff's breach of her duty of loyalty, Defendant seeks the profits she earned from Biomedical/Auxilium and Astellas while she was employed at Novartis. An employee's breach of the duty of loyalty can result in a variety of relief on behalf of the wronged employer, including "profits the employee earned in another enterprise while still employed" and "disgorgement of the disloyal employee's past compensation." *See Cameco, Inc. v. Gedicke*, 157 N.J. 504, 518 (1999); *Kaye v. Rosefielde*, 223 N.J. 218, 222 (2015).  The Restatement (Second) of Agency § 403 provides: "[i]f an agent receives anything as a result of h[er] violation of a duty of loyalty to the principal, [s]he is subject to a liability to deliver it, its value, or its proceeds, to the principal." *See also Cameco*, 157 N.J. at 518 (noting that the employer may recover the value of the "secret profit" earned by a disloyal employee).

This Court previously recognized that Novartis was harmed by Plaintiff's breach of her duty of loyalty by losing the money it paid her to work full time. (Dkt. No. 251 at 23).  Without Defendant's knowledge, Plaintiff actively solicited and accepted two consulting positions with Novartis's competitors and earned secret profits amounting to $497,907.56 ($41,783 from Biomedical/Auxilium, and a total of $456,124.56 from Astellas). (Dkt. No. 253 Ex. B ¶ 14). With regard to Plaintiff's breach of her duty of loyalty, Novartis seeks the wrongful profits she earned for the time she did not commit to the company.  Plaintiff is therefore disgorged of $497,907.56 in profits she obtained from Biomedical/Auxilium and Astellas, which shall be payable to Novartis.

### C. The Adesanyas' Motion to Stay

On September 13, 2016, Plaintiff and Mr. Adesanya filed a motion to stay this matter pending appeal of this Court's August 15 Order to the Third Circuit. (Dkt. No. 257). On December 21, 2016, the Third Circuit denied the Adesanyas' appeal as this Court had "not yet calculated the amount of damages" nor "the amount of monetary sanctions," thus the Order was not yet "final and appealable." (Dkt. Nos. 255, 264). Since no appeal is pending, the motion to stay this matter is moot and will be dismissed accordingly.

### III.   <u>CONCLUSION</u>

For the reasons stated herein, and outlined in detail below, this Court **GRANTS** Novartis's fee application with modifications in connection with the dismissal of Plaintiff's claims; **GRANTS** Novartis's motion for sanctions against Mr. Adesanya in the amount of $23,714.00; **GRANTS** damages in the amount of $1,393,918.23, and **DISMISSES AS MOOT** the Adesanyas' motion to stay. An Order consistent with this Opinion follows.

Total Hours Billed               =        7,702.4

      <u>Deductions</u>

| | |
|---|---|
| September 2013 to January 2014 Invoice | 420.7 |
| February to May 2014 Invoice | 456.3 |
| June to September 2014 Invoice | 502.4 |
| October 2014 to January 2015 Invoice | 1,014.1 |
| February to March 2015 Invoice | 623.8 |
| April to May 2015 Invoice | 729 |
| Vague Billing | 223.4 |
| Overstaffing at Court Conferences | 99.1 |
| <u>Overstaffing at Depositions</u> | 34.3      Hours |
| | 4,103.1 |

**Recoverable Hours           =       3,599.4  (Total Hours Billed Less Deductions)**

| | | | |
|---|---|---|---|
| Total Fees and Costs Sought | = | $ | 1,927,801.09 |
| | | | |
| Total Fees and Costs Sought From Plaintiff | = | $ | 1,789,566.30 |
| Costs Sought From Mr. Adesanya | = | $ | 138,234.79 |

| Deductions | Plaintiff | Mr. Adesanya |
|---|---|---|
| September 2013 to January 2014 Invoice | $ 92,559.20 | - |
| February to May 2014 | $ 99,448.50 | - |
| June to September 2014 | $ 108,071.16 | - |
| October 2014 to January 2015 | $ 296,846.00 | - |
| February to March 2015 | $ 185,455.75 | - |
| April to May 2015 | $ 246,096.00 | $ 46,091.79 |
| June to August 2015 | | $ 28,889.00 |
| Vague Billing | $ 26,909.00 | $ 26,909.00 |
| Overstaffing | | |
| Court Conferences | $ 17,036.75 | $ 4,201.75 |
| Depositions | $ 4,354.50 | $ 3,792.00 |
| September to October 2015 | $ 35,599.75 | $ 4,637.25 |
| Unbilled Fees and Costs | $ 220,149.47 | |
| | $ 1,332,526.08 | $ 114,520.79 |

| | | | |
|---|---|---|---|
| **Total Fees and Costs Owed** | = | **$** | **480,754.22** |
| | | | |
| **Total Fees and Costs To Be Paid by Plaintiff** | = | **$** | **457,040.22** |
| **Total Fees and Costs To Be Paid by Mr. Adesanya** | = | **$** | **23,714.00** |

**Damages Awarded**

| | | | |
|---|---|---|---|
| Count I | | $ | 658,788.96 |
| Count III | | $ | 26,818.71 |
| Count IV | | $ | 210,403.00 |
| Count V | | $ | 0.00 |
| Count VII | + | $ | 497,907.56 |
| | = | **$** | **1,393,918.23** |

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

26

Original:     Clerk of the Court
Cc:           Hon. Steven C. Mannion, U.S.M.J.
              Parties